Good morning, your honors. David Walters on behalf of Gilma Ruiz. As I reviewed this case, I really didn't see anything new to say other than what's already been said. So I guess I'll just open it up for any questions that the justices have. One thing I'm sure this has been covered. Are there any other pleas available that could have been negotiated if she had been properly warned? Well, you know, there was actually probably an endless number of available pleas available to her. I mean, it's not even necessarily getting her a better deal. It's basically getting her a deal that would have mitigated the immigration consequences. Just as one example, I mean, it's not, there's not an endless, there's not a defined list. But, for example, under the conviction that she has, it was for a fraud offense. Well, a fraud offense is only going to be an aggravated felony when the amount of loss is in excess of $10,000. So it's even possible that she could have actually pled to the exact same offense that she pled to in this case, but we could have mitigated the immigration consequences simply by leaving the conviction documents ambiguous as to the amount of loss. Because in removal proceedings, she's going, it's going to be the government's burden to show that she's deportable. And, therefore, if the conviction documents do not state the amount of the loss, then they're not going to be able to meet their burden of proof. I mean, that would be just one example. Any other questions? That was the same question I had in mind. Do you have reason to think that this is not an empty exercise? Well, the first thing I would say is that, you know, she should have had the right to make that choice before she entered her plea, or her plea was accepted. And, you know, before we withdrew the plea, you know, obviously we discussed that she could face, you know, much more serious consequences if she was, had to proceed to trial. But, you know, it's like, you know, if you accept this plea deal, you know, you're going to be deported and you're going to be permanently barred from the United States versus, you know, So it was a judgment call on her part. And I would say that it was a decision that she should have had a right to make before her plea deal was accepted. And that's all I can really say on that. Well, you're free to reserve the balance of your time for rebuttal. All right. Well, thank you, Your Honors. Thank you. We'll hear from the government. Good morning. May it please the Court, Sandy Leal on behalf of the United States. The district court did not abuse its discretion when it denied defendant's motion to withdraw her guilty plea, claiming that she received any type of inadequate advice from her counsel regarding the risk of deportation that her plea presented. The district court found, properly found that defendant's statements in her declaration in support of her motion were completely contradicted by her testimony at the change of plea hearing and in her writings to immigration officials before she signed that plea agreement. Defendant was asking for extraordinary relief from the district court to withdraw a guilty plea over two years after she had entered it, over two years after she testified before the district court that she understood her plea agreement, a plea agreement that advised her she might be deported. Well, that's the point. Might, the whole linchpin of this situation is she would. It's not might. I mean, the reality is, and the lawyer didn't advise her, that it was a certainty. I agree that it is a virtual certainty that she would be deported. But then that's different. Would you agree also that might is different from that? It is. But the extraordinary relief she was requesting required her to demonstrate to the district court. For fair and just reason. That's all she needs to show. Fair and just reason that she should be allowed to withdraw her guilty plea. And what about Bonilla? And Bonilla is completely different from the defendant in this case. Bonilla was completely candid with the court. This defendant was not. Defendant's statements to the court were, I had no idea that I might get deported. My previous lawyer never explained to me the immigration consequences. This is found at ER 59. This is her declaration in support of withdrawing her guilty plea, completely contradicted by the record. The record demonstrates. Is her declaration just ignorance of the law? Does it have to be mendacious? No. Her declaration is by no means ignorance. Her declaration is a lie. Her declaration, if you look at the entire record the district court was faced with, here is a defendant who was a lawful permanent resident who was applying to naturalize in the United States in 2007. She's indicted in 2008. In 2009, she goes to immigration for an interview on that naturalization application, knowing that she's been indicted for engaging in conspiracy to engage male fraud. And in that application, she doesn't mention that she has pending charges. Immigration confronts her with that. This is in November 18, 2009. December 1, 2009, she signs that plea agreement. And in December 18, 2009, she sends to immigration officials a letter. A letter where she indicates, I have decided to write a letter on my behalf. I have a lawyer. He's done a great job. But I was advised by my lawyer that I needed to hire an immigration lawyer because I might face deportation. Might. Again, in complete contradiction to the declaration she asked this court to rely on, where she said I had no idea I might be deported. She was not candid with the court. Bonilla was completely candid with the court. And, in fact, there were no facts in dispute. Everyone agreed that Bonilla's defense attorney was unaware that he was even a United States citizen. He didn't even know he was a foreign national. His wife asked, because of his mental issues, whether he had, in fact, whether he would face deportation. Those questions were never answered. There was no plea agreement. The court didn't have a colloquy where it advised Bonilla that he might be deported. But what we have here — There is a difference between being told to go see an immigration lawyer because there might be a problem and I had no idea. But is there anything to — so I accept the proposition that I had no idea is at best exaggerated. But is there anything to suggest that she had more than the notion that there might be a problem, she might be well advised to go see an immigration lawyer? Is there anything as definite as the cases seem to suggest that when the outcome seems nearly certain, as it would seem to based on a plea to this offense, that she had knowledge that it wasn't just a maybe possibility or a might, but that, yeah, that's what was going to happen? Again, her writings to immigration officials say that I'm pleading for a second chance. I want to be able to keep my legal resident status. I just hope that if it's in your power to give me this opportunity. This is at the government's excerpts of records 63 through 64. Her naturalization application is then denied by immigration officials in March of 2010, two months before she steps foot in the courthouse and pleads guilty pursuant to that plea agreement, then again advises her that she might face deportation. She's put on notice multiple times by her own writings and her actions that she, in fact, knows that deportation is an issue in this case. And if we look at the time frame, we're talking a two-year period where she does nothing, yet knows that she might be deported. But again, it is the defendant's burden to show that a withdrawal is warranted, and she's not meeting her burden. All she has is a declaration that is a lie, and the district court did not abuse its discretion when looking at what she has presented, she has not shown that she is Mr. Bonilla. She has not shown that she is Mr. Padilla. After she enters that change of plea in 2010, May of 2010, two years later, because this is a cooperation plea agreement, the defendant refuses to cooperate. In her meetings with the government in February of 2012, she then says she's not happy with her plea agreement. At that time, she doesn't say I'm not happy because I might be deported or I will be deported. She says I'm not happy because I don't want to testify against my brother, and starts reaching out to other witnesses that she's not to contact in order to get people not to testify against her brother. These are her actions even two years after we know she knows that deportation is at issue. She's not candid with the court. She is not Mr. Bonilla, and this is why the district court did not abuse its discretion. Then on March 27, 2012, she's set to testify in her brother's trial. She's taken into custody, and she takes the fifth. Only after all of this does she file a motion to withdraw her guilty plea based on the declaration that says, I had no idea that I might get deported. Now, the government doesn't have a declaration from her prior counsel, but the burden is not on the government here. The government defeated what the defendant put in the record. The government defeated her declaration, which was false. Had the defendant been able to testify against her brother, she would have been acquitted. But that's the issue to us. I mean, I understand that you succeeded in persuading the district court not to grant the relief requested. What impact does that have on our ability to look at what's in the record and make our evaluation? I believe the court making an evaluation will see that the district court did not abuse its discretion. Look at what the district court had before it. It had a defendant who had been playing games, who had spent two years with this plea agreement, who submits a declaration at the very end, after being taken into custody, saying that she had no idea that she might be deported. The court did not abuse its discretion at that point. The defendant has to satisfy its burden. It would make a mockery out of Bonilla not to require someone to be candid with the court when they're asking for such an extraordinary form of relief. I think we have your point. Okay. Thank you. Thank you for the argument. Mr. Waters. Was your client candid? Yes, Your Honor. How do you explain the apparent discrepancy? Well, I mean, I think there's no issue that she was advised that she might be deported. Which means her statement that she had no idea is not a truthful statement. Yes. I think that there was a, you know, that's not accurate. But I don't think it's really relevant. I mean, the fact is, is that she was never advised that her deportation was a certainty. The district court abused its discretion basically by equating the warning in the plea agreement of might be deported with the standard infidea, making them equal, and they're not equal. The generic statement in the plea agreement is given to every single defendant, whether they're going to be deported or not. We're talking about the responsibility of her criminal defense attorney to advise her that deportation is a certainty when the circumstances warrant. So how confident can we be that she didn't get a pretty good indication that, yeah, this is not looking good? And a conviction based on this plea is probably going to result in deportation. How do we know that wasn't the case? Well, at least we don't have it anywhere in the record. But the burden's on the defendant. I mean, she pled, and now she's got to demonstrate there's something wrong. She should be allowed to withdraw that plea. And her own credibility is at least a little suspect because she hasn't been counted. So how is there enough here for a defendant to be able to persuade the court and for us to conclude it was an abuse of discretion for the district court to decline that request? Well, Your Honor, I guess all I could say in response to that is that, you know, at least according to everything that has been said, that she did not, she was never advised that her deportation was a certainty. And had she known that, she would not have entered into the plea agreement. She did not have an idea that it was a certainty, even though she was previously warned that it might happen until, I believe, after I was retained as her counsel and reviewed her case and was able to consult with her. And that's, it was after that that we did the motion to withdraw her plea because she said she didn't want to be deported. So all the statements that she made prior to that or during the course of what happened previously, she was making with incomplete knowledge. Is there any effort to find out from prior counsel what that attorney's view of this is, what he or she related to Ms. Ruiz? I did not make that attempt, Your Honor. You said that, who prepared her declaration? Was that self-prepared or she did that with the advice of counsel? It was self-prepared, Your Honor. She certainly has the flavor of her own language, although the introductions, I am the defendant in the above-entitled case, doesn't sound like lay language. Well, at least I did not... You weren't involved in preparing that? I was not, no. Okay. Because it really is troublesome that she said... I mean, she says, Mr. Corey never explained to me the immigration consequences, all this would arise. But then she goes on to say, I had no idea that I might get deported. That's clearly not, as you say, not true. And looking at it from the district court's perspective, it does raise questions about the witness's credibility. Right. Well, the only thing I can add is that, you know, is that we're talking about... I don't think, I mean, her credibility is at issue, but we're really talking about due process, and the fact that she never had the opportunity to know what the immigration consequences were when she originally took the plea deal. Well, how do we know that? I mean, that's the core question. If what she says is true, then what you just said is correct. But if we conclude that her declaration, her statements about her lack of knowledge are questionable because her own credibility is in doubt, and we don't have anything from the attorney that speaks to what was said, it's true that the standard recitation in court goes no further than may, but that's... The court's not expected to dispense advice, and so that's not unusual. I mean, this is the problem, and I think you've said what could be said about it, but that's the problem. I can't resolve the credibility issue other than to say that, you know, the decision to make, to withdraw the plea, was not made until after she realized that her immigration consequences were a certainty. That's all I can really say. I can't resolve the credibility issue. All right? All right. We thank you. We thank both counsel for the helpful arguments. The case argued is submitted.
judges: Goodwin, Fisher, Clifton